### S. L. FOBES & CO. v. L. BRANSON.

*Principal and Agent—Evidence—Contract.*

1. A principal is answerable for the reasonable consequences of his agent's representations, but not for their special effect upon the mind of one with whom the agent makes a contract ; *Therefore*, in an action to recover on a contract for the sale of goods, evidence of the defendant that he was induced to purchase by the representations of plaintiff's agent is not admissible.

2. Where the plaintiff sold the defendant certain goods, guaranteeing that the freight thereon should not exceed ten per cent, and the freight, when the goods were delivered, did exceed that amount ; the defendant complained to the plaintiff thereof and left the goods in the depot, but did not notify him that he declined to take the goods, and thereafter the plaintiff reduced the price so as to cover freight; *Held*, that the plaintiff was entitled to recover; in such case the defendant should have given prompt notice to the plaintiff of his refusal to take the goods if he desired to avoid the contract.

CIVIL ACTION commenced before a Justice of the Peace and tried on appeal at Spring Term, 1879, of WAKE Superior Court, before *Eure, J.*

This action was brought to recover the price of certain wooden splints sold to the defendant by the plaintiffs' agent and shipped from Geneva, Ohio, to Raleigh, less a discount of ten per cent, and $18.28 additional discount allowed by the plaintiffs. The said agent testified among other things that in October, 1877, he sold a bill of splints to the defendant who is the only person in Raleigh to whom hé has sold these goods, and the price charged is that at which the goods were selling at the time, which the defendant said was lower than that charged by other dealers in like goods; and upon cross-examination he stated he had no recollection of any agreement with defendant that the freight charges should not exceed ten per cent of the bill ; that he expressed the · opinion that they would not exceed that amount, but did

not guarantee it; that the allowance made for freight re-
duces it to less than ten per cent.

The defendant admitted ordering the goods from said
agent, and testified that the agent guaranteed the freight
would not be more than ten per cent reduction which he
agreed to give defendant in the price of the goods; that the
goods arrived at the depot in Raleigh about December 1st,
1877, and the freight was $26.28, instead of ten per cent, or
$12.00; that he did not take the goods, but on the 5th of
the month wrote the plaintiffs as follows: "There are nine
boxes of goods in depot here directed to me on which there
is a freight charge of $26.28. Mr. McChessny assured me
that ten per cent on splints would certainly cover the
freight, and guaranteed me the same. How about it?"
Whether plaintiffs replied at once or not, the defendant had
forgotten, but sometime before January 4th, 1878, he says
he received a letter proposing to give him an additional re-
duction of $10.00, to which he replied as follows: "Your
favor is to hand proposing $10.00 reduction. I supposed
you would do what your agent proposed, that is, put them
at the wholesale, enough off to pay freight. I had no idea
the freight would be so much. The goods are still in the
depot. I have not the money to take them out of the rail-
road office, and don't know when I shall have. I do not
want to damage you, but I am not prepared to be damaged
myself even to the amount of a dollar."

Defendant's counsel proposed to ask the witness the fol-
lowing question: "Were you induced to order the goods by
the representations of plaintiffs' agent, that they were espe-
cially salable about christmas." Objection was made and
sustained, and defendant excepted. The evidence of the
agent in regard to this matter, after stating the goods could
not be shipped before thirty days, was, that he could not say
whether or not he represented the goods as salable; that
he could not have said they were salable in Raleigh, for he

knew nothing of the place, but did represent that the orders were in advance of the capacity of his house to furnish the goods, and the inference that they were salable was a necessary conclusion. And the defendant testified that the agent said they were especially salable during the christmas holidays, and promised they should be in Raleigh before Christmas.

The defendant insisted that the guaranty by the agent that the freight would not be more than ten per cent was a part of the contract, and the representation that the goods were especially salable during the christmas holidays was also a part of the contract, and the entire reduction was not made until sometime after December 25th, and defendant was not obliged to take them. Defendant's counsel then asked the court to charge the jury, that if defendant was unable to get the goods in his store before christmas, except by paying a larger freight bill than was guaranteed, according to defendant's testimony, then he had a right to withdraw from the contract, and the plaintiffs could not recover. The instruction was not given, but the judge charged among other things not objected to, that if defendant's testimony was believed and the jury should find that the agent guaranteed the freight should not exceed ten per cent, and when defendant complained by letter of December 5th, plaintiffs made a reduction in the price within ninety days from the the date of the contract, the plaintiffs were entitled to recover. The only issue to the jury was, "did plaintiffs comply with their contract," to which there was an affirmative response. Judgment for plaintiffs, appeal by defendant.

*Messrs. Reade, Busbee & Busbee*, for plaintiffs.
*Messrs. Gray & Stamps*, for defendant.

Smith, C. J. Two points only are presented in this appeal:
1. The court permitted the defendant to prove the con-

versation which passed between him and the plaintiff's agent at the time of the sale and the representations made by the latter to induce the defendant to enter into the contract, but refused to allow him to state whether he was influenced by these representations to purchase the goods.

2. The court was asked, and refused, to charge the jury upon the facts testified to by the defendant, that if he could not get the goods before christmas without paying a larger freight than that guaranteed, the plaintiff could not recover, and directed the jury " that if the defendant's testimony was believed, and they should find that the plaintiffs' agent guaranteed that the freight should not exceed ten per cent " on the amount of purchase, " and that when the defendant complained by letter of December 5th, plaintiffs made a reduction in the price within 90 days from the date of the contract the plaintiff should recover."

Upon this instruction the jury found that the plaintiffs did comply with their contract, and from the judgment thereon the defendant appeals.

1. The first exception is untenable. The plaintiffs were answerable for the reasonable consequences of their agent's representations, but not for their special effect upon the defendant's own mind. All the facts were in evidence and the jury could draw their own conclusions therefrom. It was not proper to enquire into the secret motives that may have in fact operated on the defendant's mind, not warranted by anything done or said by the agent. All the evidence that was admitted was competent.

2. The exceptions to the instructions asked and refused, and to those given, are also untenable.

The plaintiffs transmitted the goods in due time by railway and they reached the station at Raleigh on or before December 5th in strict conformity with the contract, as interpreted by the defendant, and were then subject to his disposal. He did not take possession because as he says

they were charged with a freight of $26.28, more than double the guaranteed rate of ten per cent on the purchase money. What is meant by a "guaranty" will be understood from the second letter of the defendant to the plaintiffs in which, referring to the goods, he says: "I suppose you would do what your agent proposed, that is, put them *at wholesale, enough off to pay freight,*" and the legal effect of which is to diminish the price by the sum paid for the freight, although in excess of the plaintiffs'.estimate. The defendant would therefore sustain no loss from this increased charge. As, however, some misunderstanding seems to have existed as to the precise terms of the contract, the defendant was not bound to accept the goods if a price beyond that agreed on was demanded, for he is not obliged to take a *controversy with them.*. It was his duty, however, to act promptly, and if he intended to refuse the goods, at once to give notice to the plaintiffs, in order that they might make other disposition of them and prevent a loss. The defendant does not do this. In his first letter to the plaintiffs, of December 5, he announces the arrival of the goods, and adds: "Mr. McChessney, (the plaintiffs' agent in making the sale) assured me that ten per cent on splints would certainly cover the freight, and guaranteed me the same. How about it?"

In his second letter, written in January, in answer to one from the plaintiffs, offering a further reduction of $10 on the price, he says: "The goods are still in the depot. I have not the money to take them out of the railroad office, and don't know when I shall have. I do not want to damage you, but I am not prepared to damage, myself even to the amount of a dollar." He does not decline taking the goods nor refuse the proposed reduction. He should have done both, and communicated his intentions promptly to the plaintiffs. In such case, if the defendant's reasons were legally sufficient, the goods would have been at the plaintiffs' risk, and any consequent loss would fall upon them.

The conduct of the defendant, followed by an actual reduction of the price by the plaintiffs below that contended for, puts the defendant in the wrong and renders him liable. The numerous cases cited for the defendant, where it is held that if a party entering into a special contract executes it in part and refuses to perform the residue, he cannot recover at all, have no application.

No error. Affirmed.